The STATE of Texas, Appellant,

v.

Brian McCOY, Appellee.

No. 13–01–465–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Dec. 5, 2002.

Rehearing Overruled Jan. 30, 2003.

George P. Morrill, II, District Attorney, Herbert B. Hancock, Assistant District Attorney, Beeville, for appellant.

R.D. Bellows, Three Rivers, for appellee.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

While incarcerated at the McConnell Unit of the Texas Department of Criminal Justice (TDCJ), Brian McCoy was indicted on three counts of assault on a public servant. After being indicted, he filed a motion to dismiss, asserting preindictment delay and violation of his right to a speedy trial. After a hearing, the trial court dismissed the case based upon preindictment delay, but denied relief based upon violation of speedy trial. By a single issue, the State argues that the trial court erred in dismissing the case based upon preindictment delay. McCoy brings a point of error complaining that the trial court erred in failing to dismiss the case based upon violation of speedy trial. We affirm in part and reverse in part.

The critical events in our analysis and their dates are as follows: the alleged offense and appellant's arrest for it, November 5, 1999; appellant's indictment, November 7, 2000; first trial setting, April 23, 2001; motion for continuance by appellant, April 19, 2001; motion to dismiss for

want of speedy trial, April, 23, 2001; and order of dismissal, July 5, 2001.

## I. JURISDICTION

Before addressing the merits of this appeal, we discuss McCoy's challenges to our jurisdiction. First, he complains the State filed the notice of appeal in the wrong cause number. *See Steinecke v. State*, 81 S.W.3d 467, 467 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (notice of appeal filed in wrong cause number does not confer appellate jurisdiction). McCoy was indicted under Cause No. B–00–M019–2–PR–B, and the dismissal order from which the State appeals bears the same cause number. The trial court entered the dismissal on July 5, 2001. Eleven days later, the State filed the notice of appeal, which at its top, bears the same cause number as the dismissal. We conclude the notice of appeal was filed in the correct cause number and, therefore, was timely filed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(d) (Vernon Supp.2002) (appeal must be filed within fifteen days after the date on which the order, ruling, or sentence to be appealed is "entered by the court."); *see also* TEX. R.APP. P. 26.2(b).

 Second, he complains the notice of appeal gives the incorrect date for the date of the dismissal being appealed. Rule 25.2(b)(2) of the Texas Rules of Appellate Procedure provides that a notice of appeal is "sufficient" if it shows the party's desire to appeal "and, if the State is the appellant, the notice complies with Code of Criminal Procedure article 44.01." TEX.

R.APP. P. 25.2(b)(2); *State v. Riewe*, 13 S.W.3d 408, 411 (Tex.Crim.App.2000). Here, the notice of appeal states: "within the 15 days of Granting the Dismissal on the above mentioned cause, the State files this Notice of Appeal to the 13th Court of Appeals of the Dismissal on June 5, 2001[sic] in Cause Number B–98–M012–0–PR–B [sic]. . . ." The trial court dismissed the case on July 5, 2001, not June 5, 2001. This error, however, does not defeat our jurisdiction. The notice of appeal declares the State is appealing from "the above mentioned cause." This case involves only one dismissal, which the trial court signed on July 5, 2001. It is apparent from the record that the State filed the notice of appeal in the cause number stated on the dismissal. Accordingly, the notice of appeal is sufficient because it shows the State's desire to appeal from the dismissal, and the notice complies with article 44.01. We hold that we do have jurisdiction of this appeal.

## II. PREINDICTMENT DELAY

### A. ARTICLE 32.01

 The motion to dismiss asserted violations of both article 32.01 of the Texas Code of Criminal Procedure and violations of McCoy's Fifth and Sixth Amendment rights to speedy trial. Article 32.01 allows a trial court to dismiss an untimely indictment. *See* TEX.CODE CRIM. PROC. ANN. art. 32.01.[1] However, McCoy did not file his speedy-trial motion based upon article 32.01 until after he was indicted. A

---

1. This statute provides:

When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180th day after the date of commitment or admission to bail, whichever date is later.

TEX.CODE CRIM. PROC ANN. art. 32.01 (Vernon Supp.2002).

speedy-trial motion based upon article 32.01 has no effect if it is presented after indictment. *Brooks v. State,* 990 S.W.2d 278, 285 (Tex.Crim.App.1999): *Smith v. State,* 998 S.W.2d 683, 694 (Tex.App.-Corpus Christi 1999, pet. ref'd).

### B. STATUTE OF LIMITATIONS

■ Statutes of limitation are the primary protection against preindictment delay and the prejudice that results from the passage of time. *Ibarra v. State,* 11 S.W.3d 189, 193 (Tex.Crim.App.1999); *Moore v. State,* 943 S.W.2d 127, 128 (Tex. App.-Austin 1997, pet. ref'd).[2] A three-year statute of limitations governs this case. *See* TEX.CODE CRIM. PROC. ANN. art. 12.01(6) (Vernon Supp.2002). Because the offense allegedly occurred on November 5, 1999, and McCoy was indicted on November 7, 2000, limitations does not bar this prosecution.

### C. FIFTH AMENDMENT RIGHT TO DUE PROCESS

■ Due process will require dismissal of the indictment if McCoy shows that preindictment delay (1) caused substantial prejudice to his right to a fair trial and (2) the delay was an intentional device to gain tactical advantage over him. *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Ibarra,* 11 S.W.3d at 193. The Due Process

Clause does not invalidate criminal prosecutions simply because a reviewing court believes a prosecutor should have sought an indictment earlier. *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Moreover, prosecutors are under no duty to file charges before they are satisfied they can prove a suspect's guilt beyond a reasonable doubt. *Id.* at 791, 97 S.Ct. 2044. To prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time. *Spence v. State,* 795 S.W.2d 743, 749–50 (Tex.Crim. App.1990) (quoting *Lovasco,* 431 U.S. at 795–96, 97 S.Ct. 2044).[3]

■ At the hearing on the motion to dismiss, defense counsel argued the preindictment delay impaired McCoy's defense because he could not locate two witnesses, Jason Wimberly and Steve Dunn. Without deciding whether McCoy has shown he was substantially prejudiced by the preindictment delay, we conclude he has failed to show the delay was brought about by the State for the purpose of gaining some tactical advantage over him. *See Moore,* 943 S.W.2d at 129. Here, the State's attorney informed the trial court that a thorough investigation of the incident caused the State to delay the indictment and that there were a number of individuals involved in the incident.[4] Accordingly, the

---

**2.** The *Moore* court said that: "It is extraordinarily difficult to show prejudice arising from a delay in an indictment that falls within the applicable statute of limitations period." *Moore,* 943 S.W.2d at 128 (citing *United States v. Martinez,* 77 F.3d 332, 335–37 (9th Cir.1996)).

**3.** In *Lovasco,* a seventeen-month delay occurred between the time that the prosecutors received the information upon which they ultimately indicted the accused and the time that he was actually indicted. The prosecutors argued that the delay occurred because they thought the crime may have involved

other people. The Supreme Court stated the Due Process Clause does not permit courts to "abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. [P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *Lovasco,* 431 U.S. at 790–791, 97 S.Ct. 2044.

**4.** The trial court held one hearing at which time it heard motions to dismiss from both Brian McCoy and a co-defendant, Kenneth L.

delay falls within the ambit of delay for investigative reasons, and, furthermore, is the same type of delay as that which was present in *Lovasco*. McCoy has failed to satisfy the second prong of the due-process analysis. *See Marion*, 404 U.S. at 322, 92 S.Ct. 455; *Ibarra*, 11 S.W.3d at 193. We hold that the trial court erred in dismissing the indictment based upon preindictment delay. We sustain the State's point of error.

## III. RIGHT TO SPEEDY TRIAL

■ The trial court denied relief based upon violation of the right to speedy trial. McCoy asserts that he was denied his Fifth and Sixth Amendment rights to speedy trial due to post-indictment delay. Speedy-trial analysis requires us to examine four factors: (1) length of delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). When reviewing a trial court's decision to grant or deny a speedy-trial claim, we defer to the court's findings of fact but review de novo its application of the law to those facts. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App.1997).

This balancing test requires weighing case-by-case the conduct of both the prosecution and the accused. *Munoz*, 991 S.W.2d at 821. No single *Barker* factor is necessary or sufficient to the finding of a speedy-trial violation. *Id.* We must consider the factors together with other relevant circumstances. *Id.*

### A. LENGTH OF DELAY

■ We must find the delay presumptively prejudicial before analyzing the remaining *Barker* factors. *Barker*, 407

U.S. at 530, 92 S.Ct. 2182. Presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry. *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Munoz*, 991 S.W.2d at 821–22. We measure the delay from the time the defendant is formally accused or arrested to the time of trial. *Marion*, 404 U.S. at 313, 92 S.Ct. 455. An eight-month delay is presumptively unreasonable and prejudicial. *Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim.App.1992). Here, McCoy was arrested for the offense on November 5, 1999 and indicted on November 7, 2000. His first trial setting was April 23, 2001. Thus, an approximate seventeen and one-half month delay existed between the arrest and the trial setting. This delay triggers our consideration of the remaining *Barker* factors.

### B. REASON FOR DELAY

■ Under *Barker*, "different weights should be assigned to different reasons" for the delay. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. A "deliberate attempt to delay the trial" weighs heavily against the State. *Id.* We consider whether the delay was due to deliberate attempts to hamper the defense or justified circumstances. *Crowder v. State*, 812 S.W.2d 63, 66 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). Here, the preindictment delay was due to justified circumstances; *i.e.*, a thorough investigation of the case. Further, nothing in the record shows the State caused the approximate five and one-half month delay between the indictment and the April 23, 2001 trial setting. Instead, it appears this delay arose from a neutral event such as a crowded court docket. Accordingly, the

Williams. The State's attorney gave the same testimony for McCoy and Williams.

seventeen and one-half month delay was not due to a "deliberate attempt to delay the trial" or a deliberate attempt to hamper the defense. We conclude that the delay should not be weighed against the State.

### C. ASSERTION OF THE RIGHT

A defendant's assertion of his speedy-trial right is entitled to strong evidentiary weight in determining deprivation of that right. *Floyd v. State*, 959 S.W.2d 706, 710 (Tex.App.-Fort Worth 1998, no pet.). Although a motion to dismiss notifies the State and the court of the speedy-trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim.App.1983). This is not to say, however, that asking only for dismissal will result in a waiver, while seeking a speedy trial and, in the alternative, a dismissal, would preserve the claim. *Id.* Each case must turn on its own facts, and the particular relief an accused seeks is but one fact to consider. *Id.*

Appellant could not have sought a speedy trial until after he was indicted in November, 2000, although he had been arrested for the crime a year earlier. Here, on April 19, 2001, four days before the trial setting, defense counsel filed an application for continuance, in which he sought to continue the trial based upon the following reasons: (1) the defense had not received court-ordered discovery; and (2) the defense had "just learned" that TDCJ had released co-defendants, Dunn and Wimberly, from incarceration, and the defense did not know of their whereabouts. The defense alleged that Dunn and Wimberly had "first-hand, eyewitness knowledge of the occurrence in question...." The defense believed that these witnesses had favorable information and sought to interview them. On April 23, 2001, defense counsel filed the motion to dismiss, alleging preindictment and post-indictment delay. Based upon the record, it is fair to say McCoy's goal was to have the trial court dismiss the indictment.

### D. PREJUDICE TO THE ACCUSED

In *Barker*, the Court identified three purposes behind the speedy-trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532–33, 92 S.Ct. 2182. In considering the factor of prejudice, moreover, the court of criminal appeals does not require proof of "actual prejudice," but only "some showing" that the delay has been prejudicial. *Munoz*, 991 S.W.2d at 826; *Phillips*, 650 S.W.2d at 401. Of these subfactors "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Munoz*, 991 S.W.2d at 826 (quoting *Barker*, 407 U.S. at 532–33, 92 S.Ct. 2182). When a defendant makes a "prima facie showing of prejudice," the State carries "'the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.'" *Munoz*, 991 S.W.2d at 826 (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim.App.1973)).

#### 1. OPPRESSIVE PRETRIAL INCARCERATION

After the alleged assault, McCoy experienced two major changes to his inmate status. First, TDCJ officials held an administrative hearing and told him that he could not accumulate good time for fifteen months. Second, TDCJ put him in administrative segregation and transferred him from the McConnell Unit in Beeville to the

Estelle Unit in Huntsville. His incarceration at Estelle was more restrictive than at McConnell. For example, at Estelle his recreation was limited to twice a week, his food portions were smaller,[5] and visitations were restricted to once a month.[6] We conclude McCoy suffered some oppressive pretrial incarceration.[7]

### 2. ANXIETY AND CONCERN

Considering the severity of the allegations against McCoy, we expect him to experience a certain amount of anxiety while he waited for trial. *See Thompson v. State*, 983 S.W.2d 780, 785 (Tex.App.-El Paso 1998, pet. ref'd). However, it was not until after November 7, 2000 that McCoy's anxiety could have begun, because before then he was not under indictment. *See Phillips*, 650 S.W.2d at 401. After he was indicted, he started having problems with his nerves and stomach. He took Zantac to help these problems. There was only a five and one-half month delay between the indictment and the trial setting, and therefore, prejudice, if any, was minimal.

### 3. IMPAIRMENT OF DEFENSE

McCoy argues that denial of his right to a speedy trial resulted in two of his co-defendants, Steven Dunn and Jason Wimberly, being unavailable to testify on his behalf. He asserts that after the alleged offense, Dunn and Wimberly were released on parole.[8] When the accused contends that he was unable to find witnesses because of the undue delay of his trial, this contention will amount to some showing that the delay has been prejudicial if the accused shows that: (1) the witnesses are unavailable; (2) their testimony might be material and relevant to his case; and (3) he has exercised due diligence in his attempt to find them and produce them for trial. *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App.1973); *Meyer v. State*, 27 S.W.3d 644, 650 (Tex. App.-Waco 2000, pet. ref'd).

Even assuming that McCoy met the first two criteria, he has not shown diligence in procuring the witnesses. McCoy has not shown that he was prevented from informing personnel at either the McConnell or Estelle Units that Wimberly and Dunn were witnesses and that he or someone else needed to communicate with them in order to get the names and addresses of their friends and relatives so that he could find them in case TDCJ paroled them. Further, after McCoy was indicted, Noel Reese was appointed to represent him.

---

5. McCoy explained that the reason he received smaller food portions at the Estelle Unit was because he was less active. At the McConnell Unit he was in the general prison population up to the time of the alleged incident.

6. McCoy explained that at the McConnell Unit he was allowed weekly visitation, and because his family lived in Corpus Christi, they had a short distance to travel when visiting him. The Estelle Unit is much further from Corpus Christi, and thus, his family had to travel a lot further to visit him. In addition, his visitation at the Estelle Unit was limited to every other week. But because the Estelle Unit only had five visitation booths for 600 people, he had visitation once a month.

7. Although McCoy's incarceration was oppressive, we cannot necessarily say the State was responsible for this incarceration. Prior to the alleged offense, TDCJ had classified him as a disruptive gang member. On cross-examination, the State's attorney asked him, "And when you're classified or when they are classified in disruptive groups, are those individuals placed in administrative segregation for their protection and other individual's protection, also?" He replied, "That's usually what happens."

8. The appellate record does not show when TDCJ paroled Dunn and Wimberly.

McCoy testified that he wrote Reese a letter,[9] but the record does not reflect that he told Reese that Dunn and Wimberly were witnesses and that someone needed to interview them and get the names and addresses of their family and friends so that he could find them in case these witnesses were paroled.

On February 5, 2001, nearly three months after McCoy was indicted, Reese withdrew as McCoy's attorney. That same day, attorney Roger Bellows was appointed to represent him. McCoy's testimony was that he told Bellows to locate Wimberly and to file a motion for an investigator. At that point, Bellows could not find Wimberly. Bellows filed a Request for Approval of Investigative Expenses; however, the order was neither granted nor denied. Because McCoy cannot show that he was diligent in his attempts to locate Dunn and Wimberly, he failed to establish one of the essential elements necessary to prevail on the prejudice analysis. *See Harris*, 489 S.W.2d at 308. We weigh this factor against him.

McCoy also argues that denial of his right to a speedy trial resulted in the loss of his written statement. After the alleged assault, a gang-intelligence officer interviewed McCoy about what had happened. He gave the officer a written statement. When counsel asked him, "And have you been provided a copy of that?" He replied, "No, sir, they, they now say it doesn't exist." McCoy does not say how his written statement would help him prepare his defense. Moreover, he does not argue the delay caused him a lapse of memory to the extent that he no longer remembers what happened. In fact, McCoy denied assaulting an officer.

### E. BALANCING THE *BARKER* FACTORS

Considering the aforementioned factors and applying the *Barker* balancing test, we conclude McCoy was not denied his right to a speedy trial. The delay was presumptively prejudicial, but not excessive. McCoy has failed to demonstrate that he promptly or persistently asserted his speedy-trial right. McCoy has not shown that the delay has impaired his defense to the extent that he cannot adequately prepare his case. Though he was under some anxiety while waiting for his trial, this is insufficient to cause the prejudice prong to weigh in his favor. Nothing in the record shows that the State deliberately delayed his trial. Further the prejudice suffered by McCoy was minimal, and he suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. We hold that McCoy was not denied a speedy trial. *See Munoz*, 991 S.W.2d at 822 (seventeen and one-half month delay not violative of speedy-trial rights). We overrule the point of error.

### IV. CONCLUSION

We AFFIRM that part of the trial court's order which denies dismissal for non-speedy trial. We REVERSE that part of the order which dismisses the case for preindictment delay. We REMAND the case to the trial court with instructions to reinstate the indictment.

---

9. McCoy testified that in his letter to Reese, he asked Reese to get him the "initial report", an audiocassette of a major case disciplinary hearing, and a videocassette "of when we were taken in handcuffs...."