In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00126-CR


______________________________




GARY JOHNATHON ANDERSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 20826




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On October 29, 2003, Gary Johnathon Anderson, already an inmate due to a prior conviction,
was charged with possession of a controlled substance in a correctional facility. Time passed. At
an appearance April 14, 2006, Anderson's recently appointed counsel moved for dismissal of the
charge for denial of Anderson's right to a speedy trial. When the trial court denied that motion,
Anderson pled guilty to the charge and was sentenced to three years' confinement. Anderson's appeal
claims error in only one thing, the trial court's denial of Anderson's motion to dismiss for want of
a speedy trial. We affirm the trial court's judgment.

 The Sixth Amendment to the United States Constitution provides in relevant part that "in all
criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This right was
made applicable to the states by the Due Process Clause of the Fourteenth Amendment. Klopfer v.
North Carolina, 386 U.S. 213, 222-23 (1967). Article I, § 10, of the Texas Constitution provides
in relevant part that "in all criminal prosecutions the accused shall have a speedy public trial." (1) Tex.
Const. art. I, § 10.

 In reviewing speedy trial claims, we employ a bifurcated standard of review, giving great
deference to the trial court's factual determinations and reviewing de novo the legal issues. Kelly v.
State, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); Zamorano, 84 S.W.3d at 648; Munoz v. State,
991 S.W.2d 818, 821 (Tex. Crim. App. 1999). We must give deference not only to a trial court's
resolution of disputed facts but also to the drawing of reasonable inferences from the facts. Kelly,
163 S.W.3d at 726. Review of the individual factors will necessarily involve factual and legal
issues, but the weighing of those factors, the act of balancing, is a purely legal question. See Johnson
v. State, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997); State v. Fisher, 198 S.W.3d 332, 337 (Tex.
App.--Texarkana 2006, pet. ref'd). 

 Because Anderson lost in the trial court on his speedy trial claim, we presume the trial court
resolved any disputed fact issues in the State's favor; we must also defer to the implied findings of
fact that the record supports. See Zamorano, 84 S.W.3d at 648. We review the trial court's ruling
in light of the argument, information, and evidence that was available to the trial court at the time
it ruled. Shaw, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); Dragoo v. State, 96 S.W.3d 308, 313
(Tex. Crim. App. 2003).

(A) Triggering the Balancing Test

 The first step in assessing a speedy trial claim is the threshold determination of whether the
delay between the indictment and trial is unreasonable. The length of delay acts as a "triggering
mechanism" for analysis of the other Barker factors. Barker, 407 U.S. at 530; Munoz, 991 S.W.2d
at 821. Only when there is a delay that is "presumptively prejudicial" should a court examine and
balance the other factors. See Munoz, 991 S.W.2d at 821. "Presumptive prejudice" does not
"necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts
deem the delay unreasonable enough to trigger the Barker enquiry." Doggett v. United States, 505
U.S. 647, 652 n.1 (1992); Munoz, 991 S.W.2d at 822; State v. McCoy, 94 S.W.3d 296, 302 (Tex.
App.--Corpus Christi 2002, no pet.).

 The length of the delay is measured from the time a defendant is arrested or formally accused. 
Shaw, 117 S.W.3d at 889. Generally speaking, a delay approaching one year is sufficient to trigger
a full-fledged balancing test under the Barker factors. See id.; Dragoo, 96 S.W.3d at 314; see also
Steinmetz v. State, 968 S.W.2d 427, 434 (Tex. App.--Texarkana 1998, no pet.) (citing Pierce v.
State, 921 S.W.2d 291, 294 (Tex. App.--Corpus Christi 1996, no pet.) (delays of eight months or
longer are generally considered presumptively unreasonable and prejudicial). In Munoz, the State
conceded that the seventeen-month delay was sufficient to trigger review of the remaining factors. 
See Munoz, 991 S.W.2d at 822. Similarly, the State here seems to concede that the delay of over two
and a half years is sufficient to permit the Court to consider the other Barker factors. We, therefore,
consider the Barker balancing test triggered.

(B) Balancing the Barker Factors

 Because the length of the delay is unreasonable, we weigh the four Barker factors: (1) the
length of delay, (2) the reason for the delay, (3) whether the defendant has asserted his right to a
speedy trial, and (4) whether the delay has caused prejudice to the defendant. We must evaluate each
factor and weigh those factors in light of the totality of the circumstances. We consider these factors
together with such other circumstances as may be relevant in a "difficult and sensitive balancing
process." See Munoz, 991 S.W.2d at 828; Johnson, 954 S.W.2d at 773. And we must do so on a
case-by-case basis and by examining the conduct of both Anderson and the State. See Shaw, 117
S.W.3d at 888; Munoz, 991 S.W.2d at 821.

 (1) The Length of Delay Weighs in Favor of Anderson's Claim

 The Texas Court of Criminal Appeals has more recently clarified the interplay between
triggering and balancing considerations associated with the length of the delay: "[A]ny speedy trial
analysis depends first upon whether the delay is more than 'ordinary'; if so, the longer the delay
beyond that which is ordinary, the more prejudicial that delay is to the defendant." Zamorano, 84
S.W.3d at 649. The Zamorano court also considered the complexity of the case in weighing the
length of the delay, agreeing that a delay of nearly four years between indictment and plea hearing
in a "plain-vanilla DWI case" weighed heavily against the State. Id.; Harris v. State, 827 S.W.2d
949, 957 (Tex. Crim. App. 1992). 

 Delays comparable to that in this case--two years, six months, and twenty-five days--have
been found to weigh, at least to some degree, in favor of a claimed violation. See Chapman v. Evans,
744 S.W.2d 133, 136 (Tex. Crim. App. 1988) (orig. proceeding) (two years and six months); Turner
v. State, 545 S.W.2d 133, 137 (Tex. Crim. App. 1976) (two years and three months). Here, the
indictment against Anderson charged him with possession of a controlled substance in a correctional
facility. These charges would not be expected to require a very complex case, at least not so
complex that it would justify a lengthy delay. We conclude the length of the delay weighs in favor
of Anderson's claim.

 (2) The Lack of Reasons for Most of the Delay Weighs Against the State

 Different weights should be assigned to different reasons for delay. Munoz, 991 S.W.2d at
822. A deliberate attempt to delay the trial should be weighed heavily against the State. Id. A
"more neutral reason" such as negligence or overcrowded dockets should be weighed less heavily
against the State. Id. A valid reason, one that justifies the delay, should not be weighed against the
State at all.

 When the State offered overcrowded courts and ongoing plea negotiations as reasons for the
seventeen-month delay in Munoz, the Texas Court of Criminal Appeals concluded that the ongoing
plea negotiations served as a valid reason for the delay and did not weigh against the State. Id. at
825. Implicit in Munoz is the court's rejection of overcrowded dockets as a valid reason for the
delay. An express rejection came later in Shaw. In Shaw, the State offered two reasons for the
thirty-eight-month delay. First, it explained that appellant's motions for continuance contributed to
the delay. The Shaw court concluded the trial court could have reasonably concluded that the
appellant's motion for continuance did account for "several months of the delay." 117 S.W.3d at
889. The remainder of the delay, urged the State, was due to an overcrowded court docket. The
court concluded overcrowded dockets did not serve as a valid reason for the extraordinary delay and,
as a result, such an explanation must be weighed against the State, although not heavily. Id. at 890.

 When the State offers no reason for the delay, this factor will weigh in favor of a finding of
a violation of the right to a speedy trial. Dragoo, 96 S.W.3d at 314. Dragoo noted, however, that
the failure to offer any reason to justify the delay will not necessarily weigh heavily in favor of such
a finding. See id. When no reason is offered, we may presume that the reason lies somewhere
between a deliberate delay and a valid reason that would justify the delay. See id. 

 The complexity of the case is also a consideration when weighing the reasons given for the
delay: "This was not a complex case; it was a simple DWI, and yet the State had no explanation for
why it could not try the case for four years." Zamorano, 84 S.W.3d at 650. The court rejected the
State's contention that the need for a Spanish translator justified a delay of nearly four years. Id. at
651. The fact that the State could not translate the videotape in which the appellant was speaking
Spanish amounted to "official negligence," and that reason for the lengthy delay weighed against the
State. Id. at 650-51.

 Shortly after Anderson was charged in this case, the Fannin County district clerk sent him
a letter explaining that he would be arraigned November 20, 2003. Anderson was not arraigned on
the stated date. In early 2004, Anderson was moved to another prison, and, during that process, the
letter from the district clerk was lost. Anderson claims that in June 2005 he mailed to the district
clerk a completed form labeled "Motion for Speedy Trial" and a letter requesting appointed counsel. 
The district clerk did not respond. Anderson also claims he sent the letter (but not the motion) to
the district attorney. The district attorney also did not respond. Anderson made no further attempt
to contact anyone about the case.

 Anderson was arraigned in early 2006. In February 2006, the trial court found that he was
indigent and, therefore, was entitled to appointed counsel. The trial court then sought to have
counsel appointed for Anderson from the State Counsel for Offenders (SCFO) office. Anderson's
appointed counsel appeared in court April 14, 2006. Anderson moved to dismiss the case based on
a denial of his rights to a speedy trial and to counsel. After the trial court denied that motion,
Anderson pled guilty. He was sentenced to three years' confinement and now seeks review of the
trial court's denial of his motion.

 Here,   the   State   attributes   a   portion   of   the   delay--that   is,   from    the   end   of
January 2006 to May 25, 2006--to plea negotiations and waiting for appointment of counsel through
the SCFO office. Although this was not expressly urged as a reason for the delay at the hearing on
the motion, the trial court took notice of its file at the hearing. Its file contained the notices of agreed
court docket settings. These notices serve as evidence of a reason for that small portion of the delay. 
The State, however, provides no other reason for the earlier, more substantial delay. We weigh this
against the State but assign less weight to this absence than we would assign to evidence that the
State deliberately delayed the trial.


 (3) Lack of Assertion of the Right to a Speedy Trial Weighs Against Anderson's Claim

 Whether and how a defendant asserts his or her speedy trial right is closely related to the
other three factors because the strength of his or her efforts will be shaped by them. Zamorano, 84
S.W.3d at 651. Therefore, the defendant's assertion of speedy trial rights is entitled to strong
evidentiary weight in determining whether the defendant is being deprived of the right. Id. 
Conversely, the failure to assert the right makes it difficult for a defendant to prove that he or she
was denied a speedy trial. Id.

 Although a defendant's failure to seek a speedy trial does not amount to a waiver of the right
to one, failure to seek a speedy trial will make it difficult for a defendant to prevail on a speedy trial
claim. Barker, 470 U.S. at 532; Shaw, 117 S.W.3d at 890. The failure to make a timely demand for
a speedy trial serves as a strong indication that the defendant really did not want one and was not
prejudiced by not having one. See Shaw, 117 S.W.3d at 890; Harris, 827 S.W.2d at 957. That is,
the State argues, Anderson cannot show that he was prejudiced by not receiving what he never
sought. Shaw goes on to explain that the longer a delay, the more likely it is that a defendant who
wanted a speedy trial would request one. See Shaw, 117 S.W.3d at 890. With that in mind, we
weigh a defendant's inaction more heavily against the defendant when the delay is longer. See id.

 At the hearing on his motion to dismiss, Anderson testified that his wife mailed him a blank
speedy trial motion in January 2005. Initially, he testified that he mailed that completed motion form
and a letter immediately, but then later explained that he mailed them in June 2005. The trial court
could have concluded from the evidence that, at best, Anderson received the form from his wife in
January 2005 and mailed the form and the letter in June 2005. However, Anderson did testify
inconsistently regarding the dates, initially stating that he mailed them off immediately. So, since
there was no other evidence that the district clerk or the district attorney ever received any such
correspondence from Anderson, the trial court could have disbelieved Anderson's testimony that he
mailed the motion and letter at all. Either finding is supported by the record and would weigh
against a finding that Anderson sufficiently and timely asserted his right to a speedy trial. Kelly, 163
S.W.3d at 726-27.

 Even at its most favorable to Anderson, the evidence shows that he waited until June to mail
the motion and letter and that he had received the blank form in January. By his own admission, this
seemingly delayed attempt was the only attempt he made to contact the district clerk or the district
attorney. Since the trial court could have found either that Anderson waited five to six months after
he got the speedy trial form to mail it or that Anderson never mailed the motion and letter, we weigh
Anderson's alleged assertion of his right to a speedy trial in favor of the State and against a finding
that Anderson was denied his right to a speedy trial. (2) 



 (4) The Lack of Prejudice Weighs Against Anderson's Claim

 The last Barker factor examines the prejudice to the defendant. Munoz, 991 S.W.2d at 826. 
We assess this prejudice in the light of the interests which the speedy trial right is designed to
protect: (a) preventing oppressive pretrial incarceration, (b) minimizing anxiety and concern of the
accused, and (c) limiting the possibility that the defense will be impaired. Id. Of these subfactors
of the prejudice factor, "the most serious is the last, because the inability of a defendant adequately
to prepare his case skews the fairness of the entire system." Id. When, as here, the defendant is
incarcerated for another conviction, we are "mainly concerned with whether or not appellant's ability
to defend himself was prejudiced by the delay." Dragoo, 96 S.W.3d at 316 (quoting McCarty v.
State, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973)). Certainly, a defendant incarcerated on another
charge is entitled to the same speedy trial rights as any other defendant. See Chapman, 744 S.W.2d
136. When a defendant makes a "prima facie showing of prejudice," the State carries "the obligation
of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary
and inevitable delay." Munoz, 991 S.W.2d at 826 (quoting Ex parte McKenzie, 491 S.W.2d 122, 123
(Tex. Crim. App. 1973)); McCoy, 94 S.W.3d at 303. 

 (a) Incarceration Subfactor. Anderson explained that the pending charges kept him from
going home, deprived him of certain time credits as a result of the detainer, and deprived him of the
possibility of serving sentences concurrently. On this point, he cites Turner, in which the Texas
Court of Criminal Appeals acknowledged that the delay of two years and three months deprived
Turner of the possibility of receiving a sentence at least partially concurrent with the sentence he was
first serving in federal prison. 545 S.W.2d at 139. Further, the Turner court explained, the detainer
by Texas authorities "may well have prejudiced his opportunity for clemency, pardon, parole, or []
trusty [status]." Id. In fact, the Turner court reversed the conviction and ordered the dismissal of
the prosecution in that case based on this prejudice and on the failure of the State to provide a valid
reason for the excessive delay. Despite factual similarities between Turner and the case at bar,
Turner is distinguishable from the instant case in that Turner persistently asserted his right to a
speedy trial and began doing so very early in his delay. See id. at 138.

 The Texas Court of Criminal Appeals reiterated its position on the possible prejudice posed
by placing a detainer on a defendant. See Chapman, 744 S.W.2d at 137. The Chapman court
explained that the detainer "resulted in the loss of certain liberty interests, including (1) the inability
to attend certain education and vocational programs; (2) he is not permitted certain off-unit or
outside prison compound privileges; and (3) he is ineligible for certain trusty classifications." Id.
at 137. When it considered this evidence in conjunction with the two-and-a-half-year delay, the
State's failure to offer a valid reason for the delay, and Chapman's assertion of his right, the
Chapman court conditionally granted Chapman's petition for writ of mandamus to compel the trial
court to set the trial within thirty days. Id. at 137-38. 

 The same concern regarding prejudice to the already-incarcerated accused was recognized
in Bailey v. State, 885 S.W.2d 193, 202 (Tex. App.--Dallas 1994, pet. ref'd). The Dallas court
pointed out, however, that lodging a detainer undermined the appellant's argument that he was
prejudiced by the possible loss of concurrent time. Id. at 202. The detainer meant that Bailey would
get credit on the second sentence from the date of the detainer. In other words, the detainer meant
that Bailey did receive credit on the second sentence for the time he spent in jail on the first;
therefore, the detainer caused no prejudice.

 Anderson also received credit. In fact, the record shows that Anderson received credit
beyond that received in Bailey. Anderson received credit from the date of the indictment rather than
simply the date the State lodged the detainer, meaning that Anderson was credited as having served
936 days of the three-year sentence imposed in the instant case. Further, as the State explains,
Anderson would not have otherwise received this credit. See Tex. Code Crim. Proc. Ann. art.
42.08(b) (Vernon 2006) (providing that sentence for offense committed while in TDCJ-ID will
commence immediately on completion of sentence for original offense). That is, since Anderson
was charged with an offense while incarcerated in a correctional facility, he was not eligible for
concurrent sentencing.

 That being the case, Anderson was not subjected to prolonged incarceration that he would
not otherwise have to serve. To the contrary, the State urges, Anderson received credit, because of
the delay, for time that he would not have otherwise been eligible to receive. This evidence satisfies
the State's obligation under Munoz to prove that Anderson "suffered no serious prejudice beyond that
which ensued from the ordinary and inevitable delay." As for the other possible collateral effects
of having the detainer lodged against him, the record fails to demonstrate any evidence of prejudicial
consequences. This factor weighs against a finding that Anderson's right to a speedy trial was
violated.

 (b) Anxiety Subfactor. In Zamorano, an appellant had testified that he lost $120.00 a day for
each  day  that  he  was  unable  to  work  and  had  missed  eleven  days  of  work  to  attend  court
dates. 84 S.W.3d at 654. The Texas Court of Criminal Appeals pointed out that, since the State did
not challenge his testimony, such evidence of economic effects was at least some evidence of the
type of "anxiety" considered under the prejudice prong of Barker. Id. The delay of four years itself
supported an inference of actual prejudice, as did testimony of direct economic costs, disruption of
the appellant's job, and weekly reporting to the bonding company during those four years. Id.

 Anderson testified that he lost sleep and suffered from "[l]ots of stress, worrying" as a result
of this long-pending charge. This stress, according to Anderson, resulted in him getting in trouble
and "getting into it" with others in jail. He explained that his continued bad behavior in jail caused
his uncle to decide not to give him the job that Anderson thought he was going to get on his release. 
This represents some evidence of anxiety as it relates to the Barker factor of prejudice and should
lend some weight to Anderson's claim.

 (c) Impairment of Defense Subfactor. Affirmative proof of prejudice is not essential to
Anderson's claim because excessive delay presumptively compromises the reliability of a trial in a
way neither party can measure. See Shaw, 117 S.W.3d at 890. Therefore, we presume that the
lengthy delay adversely affected Anderson's ability to defend himself. Id.; Dragoo, 96 S.W.3d at
315-16. This presumption is extenuated, however, by Anderson's lengthy acquiescence in the delay. 
See Doggett, 505 U.S. at 655; Shaw, 117 S.W.3d at 890; Dragoo, 96 S.W.3d at 316.

 Anderson urges that the denial of right to counsel was a symptom of the denial of his right
to a speedy trial. First, we note, Anderson conceded he did receive the letter from the Fannin County
district clerk's office in which he was informed of the steps he should take to have counsel appointed
for him. (3) Further, the record supports a finding that, despite being informed of the steps to get
appointed counsel, Anderson failed to take those steps. Again, we return to the importance of the
assertion of the right and point to this particular point as an illustration of how the failure to assert
the speedy-trial right affects the other Barker factors. 

 There is no evidence that the lengthy delay otherwise adversely impacted Anderson's ability
to present a defense to the charges. To the contrary, when the trial court asked Anderson what
witnesses he anticipated calling in his trial, he replied, "None." With no evidence to show prejudice,
we are left with only the presumption that the lengthy delay adversely affected Anderson's ability to
prepare a defense. This presumption, then, is undermined by the implied finding that Anderson
failed to make a timely demand for a speedy trial. From this finding we conclude that the
presumption of adverse effects is extenuated by Anderson's acquiescence to the delay. Considering
that this subfactor is often characterized as the most serious, the implied finding that Anderson failed
to timely assert his right to a speedy trial leads us to conclude that Anderson's failure to make some
showing of impairment to his defense weighs against his claim.

Conclusion

 We recognize that a lengthy, largely unjustified delay occurred in this case. But Anderson
failed to assert his speedy trial right. The prejudice caused by the delay is undermined by Anderson's
failure and by the State's evidence that shows that Anderson received credit for time when he would
have otherwise been subject to consecutive sentencing. This failure and its impact on the balancing
of the other factors distinguish this case from cases in which Texas courts have found a speedy trial
violation. Simply put, any prejudice caused by the delay is blunted by Anderson's failure to assert
his right to a speedy trial. After considering together the lengthy delay, the failure of the State to
offer a valid reason for most of the delay, the trial court's implied finding that Anderson failed to
assert his right to a speedy trial, and the presumption of adverse effects in light of that implied
finding, we conclude that the Barker factors weigh slightly against a finding that Anderson was
denied his right to a speedy trial.

 We affirm the trial court's judgment.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 26, 2007

Date Decided: December 13, 2007


Do Not Publish
1. Though Anderson raises this issue in terms of both federal and state constitutional rights,
Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002), applied the same test:


 The Texas constitutional speedy trial right exists independently of the federal
guarantee, but this Court has traditionally analyzed claims of a denial of the state
speedy trial right under the factors established in Barker v. Wingo, 407 U.S. 514
(1972). 
2. We have reviewed our opinions in Fisher, 198 S.W.3d at 341, and Steinmetz, 968 S.W.2d
at 427. We disagree with counsel that those cases stand for the position that the failure to assert the
right to a speedy trial does not weigh against an unrepresented defendant.
3. Anderson appears to develop his contentions surrounding right to counsel only as they relate
to the denial of a speedy trial. To the extent that his brief can be read to raise the denial of right to
counsel as a distinct point of error, we address whether the trial court's failure to appoint counsel for
Anderson deprived him of his right to counsel. The trial court is under no duty to appoint counsel
until a defendant shows that he is indigent. Tex. Code Crim. Proc. Ann. arts. 1.051, 26.04, 26.051
(Vernon Supp. 2007) (governing appointment of counsel on showing of indigence); Gray v.
Robinson, 744 S.W.2d 604, 607 (Tex. Crim. App. 1988); Harriel v. State, 572 S.W.2d 535 (Tex.
Crim. App. 1978); Vincent v. State, 817 S.W.2d 190, 191 (Tex. App.--Beaumont 1991, no pet.). 
To conclude that the trial court's failure to appoint counsel between the October 2003 indictment and
June 2005 violated Anderson's right to counsel, we would have to hold that the trial court had a duty
to sua sponte appoint counsel for Anderson in an absence of a showing that he was indigent. Such
a holding is inconsistent with the previously noted line of cases. See Gray, 744 S.W.2d at 607;
Harriel, 872 S.W.2d at 537. To conclude that the trial court's failure to appoint counsel after
Anderson's alleged request for counsel in June 2005 violated his right to counsel, we would have to
conclude that the evidence at the hearing showed that Anderson made a sufficient showing of
indigence such that the trial court would have the duty to appoint counsel. Simply put, the record
of the hearing reveals no such evidence.