ACCEPTED
07-14-00345-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
4/9/2015 4:01:22 PM
Vivian Long, Clerk

No. 07-14-00345-CR

IN THE

COURT OF APPEALS

FOR THE

SEVENTH JUDICIAL DISTRICT OF TEXAS

AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
4/9/2015 4:01:22 PM
VIVIAN LONG
CLERK

---

MARC ALLEN MASON,

APPELLANT

V.

THE STATE OF TEXAS

---

ON APPEAL IN CAUSE NO. 23,957-C

FROM THE 251st DISTRICT COURT

OF RANDALL COUNTY, TEXAS

HONORABLE ANA ESTEVEZ, JUDGE PRESIDING

---

BRIEF FOR THE STATE OF TEXAS

---

JAMES A. FARREN
CRIMINAL DISTRICT ATTORNEY
RANDALL COUNTY, TEXAS

KRISTY WRIGHT
SBN 00798601
kwright@randallcounty.org
ASST. CRIMINAL DISTRICT ATTORNEY
2309 Russell Long Blvd., Suite 120
Canyon, Texas 79015
(806) 468-5570
FAX (806) 468-5566
ATTORNEYS FOR THE STATE

**STATE REQUESTS ORAL ARGUMENT IF REQUESTED BY THE APPELLANT**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES                                           3-6

THE CASE IN BRIEF                                             7

STATE'S COUNTERPOINTS

## COUNTERPOINT NO. 1

THE APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED IN THIS CASE.

## COUNTERPOINT NO. 2

THE TRIAL JUDGE DID NOT ABUSE HER DISCRETION BY FAILING TO STAY THE PROCEEDINGS IN THIS CASE UNTIL SHE CONDUCTED AN INFORMAL INQUIRY INTO THE APPELLANT'S COMPENTENCY TO STAND TRIAL.

STATEMENT OF FACTS                                           8-10

COUNTERPOINT NO. 1
    RESTATED                                                 11
    STATEMENT OF FACTS                                       11-13
    SUMMARY OF THE ARGUMENT                                  14
    ARGUMENT                                                 14-32

COUNTERPOINT NO. 2
    RESTATED                                                 33
    STATEMENT OF FACTS                                       33
    SUMMARY OF THE ARGUMENT                                  33
    ARGUMENT                                                 33-42

PRAYER                                                       43

CERTIFICATE OF COMPLIANCE                                    43

CERTIFICATE OF SERVICE                                       44

# INDEX OF AUTHORITIES

## TEXAS CASES

*Boitnott v. State*, 48 S.W.3d 289      35
(Tex.App.—Texarkana 2001, pet. ref'd)

*Brunson v. State*, 2009 WL 3858018      26
(Tex.App.—Waco, 2009) (not reported)

*Christmas v. State*, 2009 WL 579278      26
(Tex.App.—Fort Worth 2009) (not reported)

*Douglass v. State*, 2010 WL 2196082      39, 41
(Tex.App.—El Paso 2010) (not reported)

*Dragoo v. State*, 96 S.W.3d 308      16, 22
(Tex.Crim.App. 2003)

*Ex parte LaHood*, 401 S.W.3d 45      34
(Tex.Crim.App. 2013)

*Ex parte McKenzie*, 491 S.W.2d 122      25, 31
(Tex.Crim.App. 1973)

*Flores v. State*, 625 S.W.2d 44      29
(Tex.App.—San Antonio 1981, pet. ref'd)

*Garza v. State*, 2014 WL 4289004      34
(Tex.App.—Amarillo 2014) (not reported)

*Harris v. State*, 827 S.W.2d 949      14, 15
(Tex.Crim.App. 1992)

*Heard v. State*, 2004 WL 3135234      37
(Tex.App.—Houston [1st Dist.] 2004) (not reported)

***Johnson v. State***, 2006 WL 2578033          20
   (Tex.App.—Fort Worth 2006) (not reported)

***Lahood v. State***, 171 S.W.3d 613          34, 38, 41
   (Tex.App.—Houston [14th Dist.] 2005, pet. ref'd)

***Means v. State***, 955 S.W.2d 686          35
   (Tex.App.—Amarillo 1997, pet. ref'd)

***Meyer v. State***, 27 S.W.3d 644          28, 29
   (Tex.App.—Waco 2000, pet. ref'd)

***Moore v. State***, 999 S.W.2d 385          34, 38, 41
   (Tex.Crim.App. 1999)

***Nelson v. State***, 2013 WL 5526229          38, 41
   (Tex.App.—Waco 2013) (not reported)

***Parkerson v. State***, 942 S.W.2d 789          23
   (Tex.App.—Fort Worth 1997, no pet.)

***Phipps v. State***, 630 S.W.2d 942          22, 28, 29
   (Tex.Crim.App. 1982)

***Rice v. State***, 991 S.W.2d 953          38, 41
   (Tex.App.—Fort Worth 1999, pet. ref'd)

***Salahud-din v. State***, 206 S.W.3d 203          35
   (Tex.App.—Corpus Christi 2006, pet ref'd)

***Shaw v. State***, 117 S.W.3d 883          15, 22, 24
   (Tex.Crim.App. 2003)

***Starks v. State***, 266 S.W.3d 605          26
   (Tex.App.—El Paso, 2008, no pet)

***State v. Guerrero***, 110 S.W.3d 155     29
 (Tex.App.—San Antonio 2003, no pet)

***State v. McCoy***, 94 S.W.3d 296     27, 28
 (Tex.App.—Corpus Christi 2002, no pet.)

***State v. Munoz***, 991 S.W.2d 818    15, 16, 25, 29, 30
 (Tex.Crim.App. 1999)

***Townsend v. State***, 949 S.W.2d 24    38, 41
(Tex.App.—San Antonio 1997, no pet.)

***Turner v. State***, 422 S.W.3d 676     34
 (Tex.Crim.App. 2013)

***Zamorano v. State***, 84 S.W.3d 643     23
 (Tex.Crim.App. 2002)

## <u>FEDERAL AND SUPREME COURT CASES</u>

***Barker v. Wingo***, 407 U.S. 514,    14, 15, 16, 22, 25
 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)

***Doggett v. United States***, 505 U.S. 647,   15, 25, 31
 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)

***United States v. Avalos***, 541 F.2d 1100   29
 (5th Cir. 1976)

***United States v. Marion***, 404 U.S. 307,   15
 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)

**TEXAS STATUTES**

Texas Code of Criminal Procedure, Article 46B.003            34, 37

Texas Code of Criminal Procedure, Article 46B.003(a)(1)      39

Texas Code of Criminal Procedure, Article 46B.003(a)(2)      40, 41

Texas Code of Criminal Procedure, Article 46B.004(c)         34

No. 07-14-00345-CR

IN THE

COURT OF APPEALS

FOR THE

SEVENTH JUDICIAL DISTRICT OF TEXAS

AMARILLO, TEXAS

MARC ALLEN MASON,
APPELLANT

V.

THE STATE OF TEXAS

TO THE HONORABLE COURT OF APPEALS:

Comes now, the State of Texas in the above styled and numbered cause and files this brief in response to the brief of the Appellant, Marc Allen Mason. The appellant was convicted of the felony offense of burglary of a building, enhanced, in 251st District Court of Randall County, the Honorable Ana Estevez, Judge presiding.

**<u>THE CASE IN BRIEF</u>**

THE CHARGE                    BURGLARY OF A BUILDING, ENHANCED

THE PLEA                         NOT GUILTY

THE VERDICT (JURY)         GUILTY

THE PUNISHMENT (JURY)   SEVENTEEN (17) YEARS IN PRISON & $5000 FINE

## STATEMENT OF FACTS

On November 20, 2012, the appellant broke into the Eskimo Hut (a business located in Randall County). (RR.IV-24-26; 112-115); (RR.VI-State's Exhibits 15 & 16). The surveillance footage from the Eskimo Hut shows a person breaking into this building through the "drive thru" window and stealing a carton of Kool cigarettes. (RR.IV-25-26; 112-115). Later that day, the appellant broke into a motor home. (RR.IV-42-43; 52-54; 86-90; 93-99; 106; 110; 112-115); (RR.VI-State's Exhibits 15 &16). Law enforcement officers found the appellant about three-quarters of a mile from the motor home and questioned him about the incident. (RR.IV-39; 52; 86-90; 93-99; 106). The appellant admitted to burglarizing the motor home and the Eskimo Hut. (RR.IV-110; 112-115); (RR.VI-State's Exhibits 15 & 16). A pack of Kool cigarettes were even discovered on the appellant's person. (RR.IV-56). At some point in time, the appellant was arrested for burglarizing the Eskimo Hut. (RR.II-26-27); (RR.IV-56; 115). After listening to the above evidence, the jury found the appellant guilty of the felony offense of burglary of a building. (CR.I-158-160); (RR.IV-159).

At the punishment stage of trial, the appellant pled "not true" to the enhancement paragraphs contained in the indictment. (RR.V-13). The State then presented the following evidence (regarding the appellant's criminal history and

bad acts) to the jury: 1) a judgment showing the appellant was convicted on February 3, 1997 for the offense of burglary of a vehicle (RR.V-103-104); (RR.VI-State's Exhibit 22); 2) a judgment showing the appellant was convicted on January 26, 1996 for the offense of theft of property ($50 or more but less than $500) (RR.V-104-105); (RR.VI-State's Exhibit 23); 3) a judgment showing the appellant was convicted on May 9, 1996 for the offense of failure to identify to a peace officer (RR.V-105-106); (RR.VI-State's Exhibit 24); 4) a judgment showing the appellant was convicted on February 20, 1997 for the offense of criminal mischief (RR.V-106-107); (RR.VI-State's Exhibit 25); 5) a judgment showing the appellant was convicted on April 15, 1999 for the offense of cruelty to an animal (RR.V-109-110); (State's Exhibit 27); 6) a judgment showing the appellant was convicted on May 17, 2004 for the offense of unlawful possession of a firearm (RR.V-110-111); (State's Exhibit 28); 7) a judgment showing the appellant was convicted on July 18, 2006 for the offense of unlawful possession of a firearm by a felon (RR.V-111-112); (State's Exhibit 29); 8) evidence the appellant stole a car from the Love's convenience store on October 11, 2012 (RR.V-19-20; 40-41; 85); and 9) evidence the appellant totaled Elaine Bailey's car with a sledgehammer on July 31, 2002. (RR.V-45-49).

9

After listening to the above evidence, the jury found the enhancement paragraphs contained in the indictment of Cause No. 23,957-C to be true and sentenced the appellant to seventeen (17) years in prison. (CR.I-6-7; 158-160); (RR.V-174). The jury also assessed a $5,000.00 fine. (CR.I-158-160); (RR.V-174). On September 16, 2014, the trial judge signed a certification of the appellant's right of appeal. (CR.I-147). This certification authorized the present appeal. On September 18, 2014, the appellant filed a timely notice of appeal and a motion for new trial. (CR.I-148-150). The motion for new trial was overruled by operation of law.

## COUNTERPOINT NO. 1, RESTATED

THE APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED IN THIS CASE.

**STATEMENT OF FACTS**:

Since the reason the trial judge denied the appellant's motion to dismiss for lack of a speedy trial was based on pending sanity and/or competency to stand trial examinations, the State will hereafter discuss the facts pertaining to any sanity and/or competency requests or examinations. (CR.I-120); (RR.II-57). For the sake of clarity, the State will present the facts pertaining to these issues in chronological order through the use of the following timeline.

| | |
|---|---|
| November 20, 2012 | Appellant was arrested in this case and held in the Randall County jail. (RR.II-26-27) |
| November 29, 2012 | A complaint was filed against the appellant for the felony offense of burglary of a building. (CR.I-100) |
| March 20, 2013 | An indictment was filed against the appellant for the felony offense of burglary of a building, enhanced. (CR.I-6-7) |
| March 21, 2013 | Greg Phifer was appointed as trial counsel. (CR.I-9) |
| April 19, 2013 | Trial judge signed an "Order Appointing Psychologist To Examine the Defendant Regarding the Defendant's Sanity and Competency To Stand Trial." (CR.I-10-14) Mr. Phifer specifically sought and secured this order. (RR-II-45-46; 54) The trial judge ordered Dr. Steve C. Schneider to conduct the examination. (CR.I-11) |

| | |
|---|---|
| June 6, 2013 | Dr. Schneider was scheduled to examine the appellant regarding sanity and competency to stand trial. (CR.I-10-14) However, the Randall County Sheriff's office failed to transport the appellant to the scheduled examination. (RR.II-12-13) |
| February 19, 2014 | Trial judge signed another "Order Appointing Psychologist To Examine The Defendant Regarding The Defendant's Sanity and Competency to Stand Trial." (CR.I-15-19) Dr. Schneider was again ordered to examine the appellant. (CR.I-16) |
| March 21, 2014 | The appellant refused to participate in Dr. Schneider's examination. (CR.I-18; 36-37); (RR.II-47) The appellant informed Dr. Schneider that "he had not been involved in decision to seek an evaluation" and "was unwilling to submit to legal strategy with which he did not assist in developing." (CR.I-36). Since the appellant would not participate in the examination, Dr. Schneider was unable to form an opinion about whether the appellant was competent to stand trial. (CR.I-36-37) |
| May 13, 2014 | The trial judge allowed Greg Phifer to withdraw as trial counsel and appointed Don Schofield to represent the appellant. (CR.I-29; 30) |
| June 2, 2014 | Mr. Schofield filed the "Defendant's Motion for Psychiatric Examination on Competency to Stand Trial." (CR.I-66-68) |
| June 2, 2014 | Trial judge signed an "Order Appointing Psychiatrist to Examine the Defendant Regarding the Defendant's Sanity and Competency to Stand Trial." (CR.I-74-78) Dr. Mustafa Hussain was ordered to examine the appellant. (CR.I-75) |

| | |
|---|---|
| August 14, 2014 | The appellant was scheduled to be examined by Dr. Hussain on this date. (CR.I-77) Prior to the examination, the appellant informed Dr. Hussain that he no longer wanted Mr. Schofield to represent him. (CR.I-92) Without representation, Dr. Hussain would not evaluate the appellant. (CR.I-92) |
| September 2, 2014 | Mr. Schofield filed a motion to dismiss for lack of speedy trial. (CR.I-98-99) |
| September 11, 2014 | Mr. Schofield filed the "Defendant's Motion for Re-Instatement of Psychiatric Examination on Competency to Stand Trial." (CR.I-116) |
| September 15, 2014 | A pre-trial hearing was held in this case. (RR.II-9-131) At the pre-trial hearing, the trial judge denied the re-instatement of the psychiatric examination on competency to stand trial. (CR.I-119); (RR.II-12-13). The trial judge also denied the motion to dismiss for lack of speedy trial after conducting a pre-trial hearing. (CR.I-120); (RR.II-26-52; 57) The trial judge's decision to deny the motion to dismiss for lack of speedy trial was "…based on the pending psychiatric exams, because the record reflects that that was something that was pending at all times." (CR.I-120); (RR.II-57) |
| September 15-17, 2014 | A jury trial was held in this case. (CR.I-161-164) |

Throughout this proceeding, the appellant claimed that he has a wireless audio implant in his sinus cavity that is a constant source of distraction and causes him mental anguish. (CR.I-24; 80); (RR.II-13; 75-77). The appellant also claimed that he has previously been diagnosed with bipolar disorder. (RR.II-107).

## SUMMARY OF THE ARGUMENT

The appellant's right to a speedy trial was not violated in this case. After balancing all of the *Barker* factors, it is clear that the factors weigh more heavily against finding a violation of the appellant's right to a speedy trial. Accordingly, no speedy trial violation has been shown and Issue One should be denied.

## ARGUMENT

### *BARKER* ANALYSIS

The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution and is applicable to the States through the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Texas courts apply the *Barker* test for a speedy trial analysis. *Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim.App. 1992). The *Barker* test requires that the following factors be balanced against each other to determine whether a defendant's constitutional right to a speedy trial has been violated:  1) the length of delay, 2) the reason for the delay, 3) the defendant's assertion of his speedy-trial right, and 4) the prejudice to the defendant from the delay. *Barker v. Wingo*, supra, 407 U.S. at 530.  When balancing these factors, no single factor is necessary or sufficient to establish a violation of the defendant's right to a speedy

14

trial. ***Barker v. Wingo***, supra, 407 U.S. at 531; ***Shaw v. State***, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003). The factors must be considered together with other relevant circumstances. *Id*. Moreover, the conduct of both the prosecutor and the defendant should be weighed when determining speedy-trial claims. ***Barker v. Wingo***, supra, 407 U.S. at 530; ***State v. Munoz***, 991 S.W.2d 818, 821 (Tex.Crim.App. 1999).

## 1. *Length of Delay*

The first factor weighed in the balancing test is the length of delay. ***Barker v. Wingo***, supra, 407 U.S. at 530. A speedy-trial claim will be heard only when a prima facie unreasonable period of time has passed after accusation. ***Harris v. State***, supra, at 956. The delay is measured from the time the defendant is formally accused or arrested until the time of trial. ***United States v. Marion***, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In general, a delay approaching one year is deemed "…unreasonable enough to trigger the Barker enquiry." ***Doggett v. United States***, 505 U.S. 647, 652 fn. 1, 112 S.Ct. 2686 (1992). In the instant case, the appellant was arrested on November 20, 2012 and the trial began on September 15, 2014. (CR.I-161-164); (RR.II-26-27). The State admits that this delay was sufficient to trigger the ***Barker*** enquiry.

Consequently, the twenty-two month delay weighs in favor of finding a violation of the appellant's right to a speedy trial. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003).

### 2. Reason for Delay

The second factor weighed in the balancing test is the reason for the delay. *Barker v. Wingo*, supra, 407 U.S. at 530. When assessing this second factor, the Supreme Court stated that "different weights should be assigned to different reasons…." *Id*. at 531. A deliberate attempt to delay a trial in order to hamper the defense should weigh heavily against the State. *Barker v. Wingo*, supra, 407 U.S. at 531. A neutral reason (i.e., overcrowded courts) for the delay is weighed less heavily against the State and a valid reason (i.e., an absent witness) for the delay is not weighed against the State at all. *State v. Munoz*, 991 S.W.2d at 822. Moreover, a delay attributable to the defendant may constitute a waiver of the speedy-trial claim. *Id*.

In the instant case, the prosecutor informed the trial judge that the case was delayed due to pending motions/orders for a competency examination. (RR.II-54-55). The prosecutor specifically stated that "…the State has been ready and willing to try this case for a year and a half, and I have been unable to do so

because of these pending motions filed by the Defense."[1] (RR.II-55). The original competency order was signed by the trial judge on April 19, 2013. (CR.I-10-14). The appellant acknowledged (at the September 15, 2014 pre-trial hearing on the motion to dismiss for lack of speedy trial) that <u>Mr. Phifer (the appellant's trial counsel) sought and secured the original order for a competency examination</u> from the trial judge. (RR.II-45-46). Since the trial judge signed the "Order Appointing Psychologist to Examine the Defendant Regarding the Defendant's Sanity and Competency to Stand Trial" on April 19, 2013, Mr. Phifer obviously requested the competency examination less than a month after being appointed as counsel in this case (i.e., March 21, 2013) and within five months of the appellant being arrested in this case (i.e., November 20, 2012). (CR.I-9; 10-14); (RR.II-26-27).

Even though the appellant was scheduled to be examined by Dr. Steve Schneider on June 6, 2013, personnel from the Randall County Sheriff's office failed to transport the appellant the examination. (CR.I-13); (RR.II-12-13). On February 19, 2014, the trial judge signed another "Order Appointing Psychologist

---

[1] Although the record does not contain Mr. Phifer's motion for a competency examination, it is important to note that the appellant acknowledged (during the pre-trial hearing on the motion to dismiss for lack of speedy trial) that Mr. Phifer secured the original order for a competency examination from the trial judge. (RR.II-45-46). Moreover, the defense never objected when the prosecutor repeatedly stated during the pre-trial hearing that Mr. Phifer secured this original order. (RR.II-54-55).

to Examine the Defendant Regarding the Defendant's Sanity and Competency to Stand Trial." (CR.I-15-19). Aside from the fact that the Randall County Sheriff's office failed to transport the appellant to the original examination, the record is unclear as to the reasons for the eight month delay (i.e., from the June 6, 2013 date of the original competency examination to the February 19, 2014 order for another competency examination) in ordering another competency examination. (CR.I-12-13; 15-19). Nevertheless, the prosecutor emphasized prior to trial that the State was not at fault for this unfortunate delay. (RR.II-54-55).

On March 21, 2014, the appellant was transported to his competency examination. (CR.I-18; 36-37); (RR.II-47). The appellant, however, refused to participate in Dr. Schneider's examination. (CR.I-18; 36-37); (RR.II-47). The appellant informed Dr. Schneider that "he had not been involved in decision to seek an evaluation" and "was unwilling to submit to legal strategy with which he did not assist in developing." (CR.I-36). The appellant also informed Dr. Schneider that, "I've defended myself before. Against felonies. I'm familiar with it. I've dealt with the law enough…the best thing to do I think would be just to wait until I can establish my legal position…." (CR.I-37). Since the appellant would not

participate in the examination, Dr. Schneider was unable to form an opinion about whether the appellant was competent to stand trial.[2] (CR.I-36-37).

On June 2, 2014, Mr. Schofield (who replaced Mr. Phifer as trial counsel) filed the "Defendant's Motion for Psychiatric Examination on Competency to Stand Trial." (CR.I-29-30; 66-68). The trial judge granted this motion and ordered Dr. Mustafa Hussain to examine the appellant on August 14, 2014. (CR.I-74-78). As soon as the appellant was transported to the examination, the appellant informed Dr. Hussain that he no longer wanted Mr. Schofield to represent him. (CR.I-92). Without representation, Dr. Hussain would not evaluate the appellant. (CR.I-92). Immediately thereafter this case was set for trial and the jury trial was held a month later (on September 15-17, 2014). (RR.II-55); (CR.I-161-164).

Approximately thirteen days prior to trial (on September 2, 2014), Mr. Schofield filed a motion to dismiss for lack of speedy trial. (CR.I-98-99). A mere four days prior to trial (on September 11, 2014), Mr. Schofield filed the "Defendant's Motion for Re-Instatement of Psychiatric Examination on

---

[2] In his brief, the appellant repeatedly states that the trial judge failed to notify newly appointed counsel on April 1, 2014 that the appellant would not cooperate at the March 21, 2014 competency evaluation. (Appellant's Brief at pages 17 and 18); (CR.I-39-41). Although the State assumes the appellant is asserting that Mr. Don Schofield (who replaced Mr. Phifer as counsel) should have been notified on April 1, 2014 of the appellant's failure to cooperate at the March 21, 2014 competency examination, Mr. Schofield was not even appointed to represent the appellant until May 13, 2014. (CR.I-29; 30). Hence, the authorized counsel (Mr. Phifer) was notified on April 1, 2014 about the March 21, 2014 examination. (CR.I-41).

Competency to Stand Trial." (CR.I-116). At a pre-trial hearing held on the day of trial, Mr. Schofield asked the court to consider granting his motion for the re-instatement of the competency examination based on the appellant's *pro se* motions asserting he has a wireless audio implant in his sinus cavity. (CR.I-24; 80); (RR.II-13). The trial judge denied the motion for the re-instatement of the competency examination. (CR.I-119); (RR.II-13). At this same pre-trial hearing, the trial judge held a hearing on the motion to dismiss for lack of speedy trial. (RR.II-24-57). After listening to the evidence presented at this hearing, the trial judge denied the motion to dismiss for lack of speedy trial "…<u>based on the pending psychiatric exams, because the record reflects that that was something that was pending at all times</u>." (emphasis added by this writer); (CR.I-120); (RR.II-57).

A delay due to a defendant's claim of incompetency or who is temporarily incompetent to stand trial is valid and justified. *See **Johnson v. State***, 2006 WL 2578033 (Tex.App.—Fort Worth 2006) (not reported). As stated previously, the <u>appellant's attorney</u> secured the original order from the trial judge for a competency examination within five months of being arrested in this case. (CR.I-10-14); (RR.II-26-27; 45-46). Although there was an eight month delay between the first scheduled competency examination (June 6, 2013) and the February 19, 2014 order for another competency examination, the State was not at fault for

the unfortunate delay. (CR.I-15-19); (RR.II-12-13; 55). The appellant could not be evaluated during the second scheduled examination (held on March 21, 2014) and the third scheduled examination (held on August 14, 2014) because he refused to participate in the second scheduled examination and he requested the removal of defense counsel during the third scheduled examination. (CR.I-18; 36-37; 77; 92); (RR.II-47). Finally, four days prior to trial, defense counsel requested another competency examination which the trial judge denied. (CR.I-116; 119); (RR.II-12-13). Since a competency motion/order was pending throughout most of this criminal proceeding and since the original competency examination was requested by defense counsel, the State's reason for the delay was valid and should not be weighed against the State at all.

Moreover, it is reasonable to infer that the trial judge actually attributed the reason for the delay in this case against the appellant. As stated above, the appellant refused to cooperate in the March 21, 2014 examination and impeded the August 14, 2014 examination by requesting the removal of Mr. Schofield as trial counsel. (CR.I-18; 36-37; 77; 92); (RR.II-47). Based on the appellant's actions during these examinations, the trial judge could have reasonably believed he was trying to avoid trial by delaying the proceedings. Accordingly, the second *Barker* factor weighs against finding a violation of the appellant's right to a speedy trial.

### 3. Assertion of Speedy Trial Right

The third factor weighed in the balancing test is the defendant's assertion of his right to a speedy trial. *Barker v. Wingo*, supra, 407 U.S. at 530. Although a defendant's failure to assert his speedy trial right does not amount to a waiver of such right, the "…failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo*, supra, 407 U.S. at 532. In other words, a defendant's failure to make a timely demand for a speedy trial strongly indicates that he "…did not really want one and that he was not prejudiced by not having one." *Shaw v. State*, supra, at 890. Moreover, a defendant's inaction weighs more heavily against a violation the longer the delay occurs. If a defendant really wanted a speedy trial, then he would have taken some action to obtain one. *See Shaw v. State*, supra, at 890; *Dragoo v. State*, supra, at 314-315 (right to speedy trial is not violated when defendant demonstrates no serious prejudice during more than a three year delay between arrest and trial and defendant waited just before trial to assert his speedy trial right); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex.Crim.App. 1982) (right to speedy trial is not violated when defendant demonstrated no prejudice by four year delay between arrest and trial and the defendant waited until one month before trial to assert his speedy trial right).

In the instant case, the appellant <u>never</u> requested a speedy trial. Instead, the appellant filed a <u>motion to dismiss for lack of a speedy trial</u> approximately twenty-two months after he was arrested. The record shows that the appellant was arrested on November 20, 2012 and did not file the motion to dismiss for lack of a speedy trial until September 2, 2014. (CR.I-98-99); (RR.II-26-27). In addition, the appellant's dismissal request was filed a mere thirteen days prior to trial. (CR.I-98-99; 161-164). The appellant's "...request for a dismissal instead of a speedy trial weakens his claim because it shows a desire to have no trial instead of a speedy trial." ***Parkerson v. State***, 942 S.W.2d 789, 791 (Tex.App.—Fort Worth 1997, no pet.); ***Zamorano v. State***, 84 S.W.3d 643, 651 n.40 (Tex.Crim.App. 2002).

Additionally, the appellant claims that he wrote "...a letter to counsel for the State in which he requested a speedy trial. State's counsel remembered receiving such a letter, but did not specifically affirm or deny its contents." (Appellant's Brief at pages 9 at fn 3, 20). A careful review of the record, however, shows that the appellant <u>never requested a speedy trial</u> in a letter to the prosecutor. (RR.II-22-23). The appellant merely informed the prosecutor that he was housed in a jail cell with no lights for fourteen months. (RR.II-22). For the sake of clarity, the State hereafter provides an excerpt from the record of the conversation between the appellant and the prosecutor pertaining to this letter:

23

Defendant: Well, I sent—I didn't file the cover letters.  But I addressed an issue to Mr. Blount [the prosecutor] concerning the cell I was in in the jail.  There was no lights in it for fourteen months.

Prosecutor: I remember that.

Court: Okay.

Prosecutor: What is it that you want?

Defendant: Well, it has to do with speedy trial.  I just wanted to be sure you had that in your file and were aware of it.
(RR.II-22-23).

Immediately after this conversation, the trial judge held a pre-trial hearing on the motion to dismiss for lack of speedy trial.  (RR.II-23-24).  It is reasonable to assume, based on the above excerpt, that the appellant was going to rely on his living conditions at the jail to show he was prejudiced by the lack of a speedy trial.

Moreover, the appellant claimed that he informed Mr. Phifer (the appellant's original trial counsel) that he wanted a speedy trial.  (RR.II-49). Again, the trial judge received no request from Mr. Phifer or from the appellant for a speedy trial in this criminal proceeding.  If the appellant actually wanted a speedy trial, he could have easily requested one in his *pro se* motions.  (CR.I-20-23; 24-26; 31-32; 69-70; 79-82; 83-91). For all of these reasons, the appellant's failure to actually request a speedy trial from the trial judge and his longtime acquiescence in the delay weighs very heavily against finding a violation of the appellant's right to a speedy trial.  ***Shaw v. State***, at 890.

### 4. Prejudice to Appellant

The fourth factor weighed in the balancing test is the prejudice to the defendant as a result of the delay. *Barker v. Wingo*, supra, 407 U.S. at 530. In the *Barker* case, three interests are considered when determining prejudice: 1) the prevention of oppressive pre-trial incarceration; 2) the minimization of anxiety and concern of the defendant; and 3) the impairment of the defendant's ability to present a defense. *Barker v. Wingo*, supra, 407 U.S. at 532. The Court of Criminal Appeals considers the most serious of these factors to be the impairment of the defendant's defense. *State v. Munoz*, supra, at 828. The defendant must make a prima facie showing of prejudice. If the defendant makes such a prima facie showing of prejudice, then the State must prove that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim.App. 1973). Moreover, the presumption of prejudice is extenuated by the defendant's acquiescence in the delay. *Doggett v. United States*, supra, 505 U.S. at 658.

### a. Pre-Trial Incarceration

As stated above, the appellant was incarcerated for approximately twenty-two months prior to trial (the appellant was arrested on November 20, 2012 and

the trial began on September 15, 2014). (CR.I-161-164); (RR.II-26-27). The "Nunc Pro Tunc Judgment of Conviction By Jury" reflects that the trial judge gave the appellant credit for the entire time he was in the Randall County jail prior to trial. (CR.I-158). Since the appellant was given time credit from November 20, 2012 until September 17, 2014, his pre-trial incarceration was not oppressive and did not violate his right to a speedy trial. *Starks v. State*, 266 S.W.3d 605, 612 (Tex.App.—El Paso, 2008, no pet.) (holding that defendant's twenty-five month pre-trial incarceration was not oppressive when the defendant received credit on his sentence for time served and the defendant pled guilty to the charges); *Christmas v. State*, 2009 WL 579278 (Tex.App.—Fort worth 2009) (not reported); *Brunson v. State*, 2009 WL 3858018 (Tex.App.—Waco, 2009) (not reported).

Moreover, the appellant alleges that he suffered oppressive pre-trial incarceration based on his living conditions (i.e., the lights had been removed from his cell and he was living in the dark from approximately March of 2013 until March 22, 2014). (Appellant's Brief at pages 21-23); (RR.II-28-29). However, the appellant admitted that he was accused of damaging jail property during his pre-trial incarceration. (RR.II-38; 41-42; 44). The appellant also admitted that he was housed in administrative segregation (for approximately twenty-one months of his pre-trial incarceration) for getting involved in an altercation between two

26

inmates. (RR.II-27; 40-42). The trial judge could have reasonably inferred that the lights were removed from the appellant's jail cell because he damaged jail property. (RR.II-38; 41-42; 44). The State was not responsible for the placement of the appellant in administrative segregation or for the dark jail cell. *See **State v. McCoy***, 94 S.W.3d 296 n. 7 (Tex.App.—Corpus Christi 2002, no pet.). Since the appellant was given time credit for his pre-trial incarceration and since the appellant's own actions resulted in his housing conditions at the jail, the appellant suffered minimal oppressive pre-trial incarceration.

### b. Anxiety

In his brief, the appellant claims that he suffered anxiety from living in a dark cell during his pre-trial incarceration. (Appellant's Brief at pages 21-23). However, the appellant and/or his attorney never requested a speedy trial from the trial judge during his entire twenty-two month pre-trial incarceration. The failure to request a speedy trial from the trial judge is evidence that any anxiety the appellant suffered from his pre-trial confinement was not as detrimental to the appellant as he claimed in his brief.

Moreover, as stated above, the appellant admitted that he was accused of damaging jail property and that he was housed in administrative segregation for

getting involved in an altercation between two inmates. (RR.II-27; 38; 40-42; 44).

The trial judge could have reasonably inferred that the lights were removed from

the appellant's cell for damaging jail property. (RR.II-38; 41-42; 44). The State was

not at all responsible for the fact that the appellant was housed in administrative

segregation or the fact that the lights were removed from the appellant's jail cell.

*See* **State v. McCoy**, supra. Hence, the appellant suffered minimal anxiety due to

his pre-trial incarceration.

### c. Ability to Present a Defense

The appellant alleges that his ability to present a defense was impaired in

this case because of the unavailability of a witness, the memory loss of a witness,

and his housing conditions at the jail. (Appellant's Brief at pages 21-23).

### 1. Unavailable Witness

A claim of prejudice based on the unavailability of a witness requires the

defendant to show: 1) the witness was unavailable at the time of trial; 2) the

testimony that would have been offered was relevant and material to the

defense; and 3) due diligence was exercised in an attempt to locate the witness

for trial. **Phipps v. State**, supra, at 947; **Meyer v. State**, 27 S.W.3d 644, 650

(Tex.App.—Waco 2000, pet. ref'd). In the instant case, the appellant claimed that

witness Rose Grubbs "…moved more than 500 miles from Amarillo…." (RR.II-35). When the prosecutor questioned the appellant as to why Ms. Grubbs could not attend the trial, the appellant responded, "That is all the information I have. I have been living in a dark cell in jail. I don't –I haven't had phone access. I don't know. I only know what has been told to me." (RR.II-50-51). Since the appellant was able to locate the witness and since the appellant failed to explain why the witness was unavailable at the time of trial, his ability to present a defense was not impaired by the alleged unavailable witness. *Phipps v. State*, supra, at 947; *Meyer v. State*, supra, at 650.

## 2. Witness's Memory Loss

As for the complaint regarding witness Danielle Sandoval's memory loss, general allegations of failure of memory are insufficient to establish prejudice. *United States v. Avalos*, 541 F.2d 1100,115 (5th Cir. 1976); *State v. Guerrero*, 110 S.W.3d 155, 162 (Tex.App.—San Antonio 2003, no pet); *Flores v. State*, 625 S.W.2d 44, 47 (Tex.App.—San Antonio 1981, pet. ref'd). To show impairment of a defense based on a witness' memory loss, a defendant must show that the lapse of memory was in some way significant to the outcome of the case. *State v. Munoz*, supra, at 829. Bare assertions of dimming memories do not constitute

such a showing. *Id*. In the instant case, the appellant claimed that witness Sandoval's "…memory has failed on this—on issues of this case." (RR.II-36). This bare assertion of memory loss does not constitute a showing of impairment of a defense. *See **State v. Munoz***, supra. Moreover, the appellant did not even bring witness Sandoval's statement (in which she claimed memory loss) to trial in order for the State to ascertain whether the allegations contained in her statement were significant to the outcome of the instant case. (RR.II-51). For all of these reasons, the appellant's ability to present a defense was not impaired by witness Sandoval's alleged memory loss.

### 3.  Appellant's Housing Conditions at Jail

As for the housing complaint, the appellant suggests that his housing conditions (i.e., living in a dark cell for approximately a year) hindered his ability to present a defense because he was not able to read or write in the dark cell. (Appellant's Brief at pages 21-23); (RR.II-22; 29-30, 50). However, the appellant admitted that his cell was equipped with lights by March of 2014. (RR.II-29). The approximate six month time period between the date the appellant was housed in a lighted cell (March of 2014) and the commencement of trial (September 15, 2014) was adequate time to enable the appellant to prepare a defense in this

case, especially since the appellant admitted that he was well versed in criminal proceedings. (CR.I-37). At the scheduled March 21, 2014 competency examination, the appellant informed Dr. Schneider that, "I've defended myself before. Against felonies. I'm familiar with it. I've dealt with the law enough." (CR.I-37). Accordingly, the appellant's ability to present a defense was not impaired by his pre-incarceration living conditions.

Upon review of all three of the prejudice concerns (i.e., oppressive pre-trial incarceration, anxiety, and impairment of a defense), the appellant has failed to show that he suffered prejudice as a result of the twenty-two month delay. In fact, the presumption of prejudice was extenuated by the appellant's acquiescence in the delay (i.e., his failure to request a speedy trial). *See Doggett v. United States*, 505 U.S. at 658. Assuming *arguendo* that the appellant made a prima facie showing of prejudice, it is clear that the appellant suffered no prejudice beyond that which ensued from the ordinary and inevitable delay of trial. *Ex parte McKenzie*, supra, at 123. Therefore, the fourth factor of the *Barker* balancing test weighs against finding a violation of the appellant's right to a speedy trial.

### 5.  *Balancing the Barker Factors*

After balancing all the ***Barker*** factors, it is clear the State did not violate the appellant's right to a speedy trial. Weighing in favor of finding a violation of the appellant's speedy trial rights is the twenty-two month delay. Weighing neutral or against finding a violation of the appellant's speedy trial right are the following facts: 1) the State offered a valid reason for the delay (i.e., the continuous requests/orders for a competency examination), 2) the appellant failed to request a speedy trial, 3) the appellant acquiesced in the delay by failing to request a speedy trial, 4) the inference that the appellant hindered the competency examinations in order to avoid trial (the appellant refused to cooperate during the March 21, 2014 examination and the appellant refused Mr. Schofield's representation during the August 14, 2014 examination), 5) the appellant filed his motion to dismiss for lack of speedy trial a mere thirteen days prior to trial, 6) the presumption of prejudice was extenuated by the appellant's acquiescence in the delay, and 7) the appellant suffered no prejudice beyond the ordinary and inevitable delay of trial. When all of these factors are balanced together, the appellant's speedy trial right was not violated.  Accordingly, no error has been shown and Issue One should be denied.

**COUNTERPOINT NO. 2, RESTATED**

THE TRIAL JUDGE DID NOT ABUSE HER DISCRETION BY FAILING TO STAY THE PROCEEDINGS IN THIS CASE UNTIL SHE CONDUCTED AN INFORMAL INQUIRY INTO THE APPELLANT'S COMPENTENCY TO STAND TRIAL.

**STATEMENT OF FACTS**:

The State adopts and incorporates herein by reference for all purposes the facts set forth in the "Statement of Facts" section of this brief at pages 11-13.

**SUMMARY OF THE ARGUMENT**

The trial judge did not abuse her discretion by failing to stay the proceedings in this case until she conducted an informal inquiry into the appellant's competency to stand trial. Prior to trial and during trial, the defense never claimed that the appellant was incompetent to stand trial. Although the appellant's belief that he has a wireless audio implant in his sinus cavity or bipolar disorder may reflect a mental illness, it does not demonstrate that he was incompetent to stand trial. Thus, no abuse of discretion has been shown and Issue Two should be denied.

**ARGUMENT**

a. **Applicable Law**

A defendant is incompetent to stand trial if he does not have "...sufficient

present ability to consult with the person's [a defendant's] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against" him. Article 46B.003 of the Texas Code of Criminal Procedure. A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. *Id*. Once the issue of the defendant's competency to stand trial has been sufficiently raised, the trial judge should determine by "informal inquiry" whether there is "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." Article 46B.004(c) of the Texas Code of Criminal Procedure. At the informal inquiry stage, the trial judge is to only consider evidence tending to show incompetency and should not consider any evidence showing competency. *Ex parte LaHood*, 401 S.W.3d 45, 52-53 (Tex.Crim.App. 2013); *Turner v. State*, 422 S.W.3d 676, 692 (Tex.Crim.App. 2013); *Garza v. State*, 2014 WL 4289004 (Tex.App.—Amarillo 2014) (not reported). Moreover, the trial judge's decision not to conduct an "informal hearing" is reviewed under an abuse of discretion standard. *Lahood v. State*, 171 S.W.3d 613, 617-618 (Tex.App.—Houston [14th Dist.] 2005, pet. ref'd); *Moore v. State*, 999 S.W.2d 385, 393 (Tex.Crim.App. 1999).

### b. Analysis

### *1. Appellant Failed to Preserve Error for Review*

Although the defense repeatedly requested a competency examination, defense counsel and/or the appellant never asserted the appellant was incompetent to stand trial or objected to the trial judge's failure to hold an "informal hearing" to determine competency. (CR.I-66-68; 116-118); (RR.II-12-13; 45-46; 54). Consequently, any alleged error arising from the trial judge's failure to hold the "informal hearing" was waived. *See Salahud-din v. State*, 206 S.W.3d 203, 208 (Tex.App.—Corpus Christi 2006, pet. ref'd) (holding defendant forfeited any purported error with regard to three pre-trial psychological evaluations by failing to object when the trial judge proceeded to trial); *Boitnott v. State*, 48 S.W.3d 289, 293 (Tex.App.—Texarkana 2001, pet. ref'd) (holding no preservation of alleged error when defendant did not object to the trial court's failure to hold a competency hearing); *Means v. State*, 955 S.W.2d 686, 689 (Tex.App.—Amarillo 1997, pet. ref'd) (holding no preservation of alleged error when defendant did not file a motion urging he was incompetent, did not request a hearing to determine whether evidence of incompetency existed (although two experts examined defendant at the judge's bequest and found that defendant suffered from psychological shortcomings), and did not request that the trial judge conduct a

formal competency hearing). Issue Two was, therefore, not preserved for appellate review and should be denied.

## 2. *No Abuse of Discretion For Failing to Conduct an "Informal Hearing"*

In Issue Two, the appellant alleges that the trial judge had a duty to stay all proceedings in this case until the issue of competency was addressed. (Appellant's Brief at pages 6; 23-28). A review of the record shows that the trial judge ordered three competency examinations throughout the proceedings in Cause No. 23,957-C. (CR.I-10-14; 15-19; 74-78). None of these competency examinations were completed for the following reasons: 1) the Randall County Sheriff's office failed to transport the appellant to the first competency examination (RR.II-12-13), 2) the appellant refused to participate in the second examination (CR.I-36), and 3) the appellant informed the examiner during the third examination that he no longer wanted his trial attorney to represent him in this case (CR.I-92).

A failure to cooperate is not probative of incompetence to stand trial. In other words, the fact that the appellant refused to cooperate during the competency examinations and the fact that the examinations were never completed does not help the appellant rebut the presumption of competency.

*See* **Heard v. State**, 2004 WL 3135234 (Tex.App.—Houston [1st Dist.] 2004) (not reported). The trial judge could have reasonably concluded that the appellant was uncooperative during two of the competency examinations in order to avoid trial by delaying the proceedings.

As stated previously, the defense never informed the trial judge that the appellant was incompetent to stand trial (i.e., that he was unable to consult with his lawyer with a reasonable degree of rational understanding or that he was unable to understand the proceedings against him). Article 46B.003 of the Texas Code of Criminal Procedure. At the September 15, 2014 pre-trial hearing, Mr. Schofield (trial counsel) did not argue that the appellant was incompetent to stand trial. (RR.II-12-13). Instead, Mr. Schofield argued that the trial judge should re-instate the competency examination based on the appellant's *pro se* motions indicating that he has a wireless audio implant in his body. (CR.I-116); (RR.II-12-13). In this regard, six *pro se* motions were filed in this case. (CR.II-20-23; 24-26; 31-32; 69-70; 79-82; 83-91). In two of these *pro se* motions, the appellant specifically discussed the implant and stated that he has "…a wireless audio implant within his right maxillary sinus cavity, which is active on PI20-electric power supply" and that the audio implant "is a constant source of distraction and mental anguish…." (CR.I-24; 80). The appellant also asserted during the

September 15, 2014 pre-trial hearing that he has previously (at least two years ago) been diagnosed as bipolar. (RR.II-107).

The fact that the appellant may have a mental or psychological impairment does not raise the issue of competency. The trial judge, therefore, did not abuse her discretion by failing to conduct an informal inquiry into the appellant's competency to stand trial based on the two *pro se* motions (alleging the appellant has a wireless audio implant within his sinus cavity) and the appellant's bipolar assertion. *See **Moore v. State***, supra, at 395 (the defendant's propensity toward depression is not proof of his inability to communicate with counsel or understand proceedings); ***Lahood v. State***, supra, at 619 (no abuse of discretion in failing to *sua sponte* inquire into defendant's competency despite outbursts during trial, requests for medicine, comments concerning "psych meds", history of mental problems, and claim of difficulty understanding proceedings); ***Rice v. State***, 991 S.W.2d 953, 957 (Tex.App.—Fort Worth 1999, pet. ref'd) (a competency test is not whether a defendant labored under a mental, behavior, or psychological impairment); ***Townsend v. State***, 949 S.W.2d 24, 27 (Tex.App.—San Antonio 1997, no pet.) (a determination that a defendant is mentally ill does not constitute a finding that the defendant is incompetent to stand trial); ***Nelson v. State***, 2013 WL 5526229 (Tex.App.—Waco 2013) (not reported) (no abuse of

discretion in failing to *sua sponte* inquire into defendant's competency despite testimony that defendant had delusional thinking based on his belief that the government was out to get him and that the government prevented him from solving all of the world's problems with his nano-mind technology); ***Douglass v. State***, 2010 WL 2196082, at page 2 (Tex.App.—El Paso 2010) (not reported) (no abuse of discretion in failing to hold an informal inquiry despite evidence that the court knew the defendant was recently diagnosed with schizoaffective disorder and bipolar disorder, who suffered from hallucinations, and was taking medications to quiet voices in her head and to control her racing thoughts).

Although the appellant's belief that he has an implant in his sinus cavity or bipolar disorder may reflect a mental illness, it does not demonstrate that he lacked the ability to consult with his lawyer or lacked an understanding of the proceedings against him. In determining whether the appellant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, the record shows that the appellant was "comfortable with Mr. Schofield's representation" and that the appellant understood he could communicate with Mr. Schofield at any time during the trial through whispers or by written communication. (RR.II-10-12); Article 46B.003(a)(1) of the Texas Code of Criminal Procedure. In fact, Mr. Schofield presented several of the appellant's

requests to the trial judge throughout the proceeding.  (RR.II-13-14); (RR.IV-75). The record contains absolutely no evidence that the appellant's alleged impairments prevented him from consulting with his attorney.

In determining whether the appellant had a rational as well as factual understanding of the proceeding against him, it is important to note that the trial judge actually allowed the appellant to argue his own *pro se* motions at the September 15, 2014 pre-trial hearing.  (RR.II-14-23); Article 46B.003(a)(2) of the Texas Code of Criminal Procedure. During the presentation of his *pro se* motions, the appellant was lucid and able to easily articulate his specific complaints to the trial judge.  (RR.II-14-23). The appellant was also very responsive to any questions posed by the trial judge.  (RR.II-14-23). On several occasions, the appellant coherently explained to the trial judge why he felt certain evidence was important to his case.  (RR.II-15-16; 17; 19-22). The appellant's presentation of the *pro se* motions reflects that he had a rational as well as factual understanding of the proceeding against him.  (RR.II-14-23); Article 46B.003(a)(2) of the Texas Code of Criminal Procedure.

Likewise, a review of Dr. Schneider's report from the March 21, 2014 examination (which the appellant refused to participate in) reflects that the appellant had a good understanding of his case and the criminal justice system.

At the March 21, 2014 examination, the appellant informed Dr. Schneider that he would not participate in the examination because "he had not been involved in decision to seek an evaluation" and "was unwilling to submit to legal strategy with which he did not assist in developing." (CR.I-36). The appellant further informed Dr. Schneider that, "I've defended myself before.  Against felonies.  I'm familiar with it.  I've dealt with the law enough…the best thing to do I think would be just to wait until I can establish my legal position…." (CR.I-37). Upon reviewing the pre-trial hearing and Dr. Schneider's report, it is clear that the appellant had a rational as well as factual understanding of the proceedings against him.  (CR.I-36-37); Article 46B.003(a)(2) of the Texas Code of Criminal Procedure.

For all of these reasons, the trial judge did not abuse her discretion by failing to stay the proceedings in this case and by failing to initiate an informal inquiry into the appellant's competency to stand trial. While the appellant's belief that he has a wireless audio implant in his sinus cavity or bipolar disorder may reflect a mental illness, it does not demonstrate that the appellant lacked the ability to consult with his lawyer or lacked a rational as well as factual understanding of the proceedings against him. *See **Moore v. State***, supra, at 395; ***Lahood v. State***, supra, at 619; ***Rice v. State***, supra, at 957; ***Townsend v. State***, supra, at 27; ***Nelson v. State***, supra; ***Douglass v. State***, supra, at page 2.

Accordingly, the competency to stand trial issue was never sufficiently raised and the trial judge did not abuse her discretion by failing to conduct an informal competency hearing. Issue Two is, therefore, without merit and should be denied.

## PRAYER

WHEREFORE, Premises Considered, the State prays that the relief requested by the appellant be denied and that this Honorable Court affirm the judgment of the trial judge.

Respectfully submitted,

JAMES A. FARREN
CRIMINAL DISTRICT ATTORNEY
RANDALL COUNTY, TEXAS

s/ Kristy Wright
KRISTY WRIGHT
SBN: 00798601
kwright@randallcounty.org
Assistant Criminal District Attorney
Randall County Justice Center
2309 Russell Long Blvd., Suite 120
Canyon, Texas 79015
(806) 468-5570
FAX (806) 468-5566

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count of this entire brief is 8408 words.

s/ Kristy Wright
KRISTY WRIGHT

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing State's Brief has been served on Eric Coats, Attorney for Appellant (Marc Allen Mason), 1716 S. Polk, Amarillo, Texas 79102, by depositing same in the United States mail, postage prepaid on this 9th day of April, 2015.

s/ Kristy Wright
KRISTY WRIGHT